ANDREWS and others *v.* FIELDING.

(*Circuit Court, D. Connecticut.* May 3, 1884.)

PATENTS FOR INVENTIONS—CONVEYANCE—RECONVEYANCE.
  Letters patent conveyed by a patentee with condition of reconveyance upon a certain emergency; that emergency having arisen, the court decrees the excution of the reconveyance.

In Equity.
*Charles E. Perkins,* for plaintiffs.
*Frank L. Hungerford,* for defendants.

SHIPMAN, J. In the early part of January, 1881, Sanford S. Burr owned two letters patent, No. 230,105 and reissue No. 9,393, each for folding bedsteads, the exclusive use of which he had given to A. H. Andrews & Co., of Chicago, until February 14, 1881. The defendant, William I. Fielding, as the president and manager of the National Wire Mattress Company of New Britain, had also been selling to said firm patented wire nettings to be used upon the Burr bedsteads. Burr became anxious lest Andrews & Co., at the expiration of their license, should refuse to renew it, or should compel him to yield to an unfavorable contract. Fielding was also suspicious that Andrews & Co. intended to discontinue the use of his nettings, and hearing of Burr's anxiety, telegraphed to him, about January 17, 1881, to come to New Britain at his (Fielding's) expense, and to make no arrangements with Andrews & Co. Burr immediately went from Chicago to New Britain, and, upon Fielding's representations that a union of the two interests would be for the advantage of each, and that he desired to assist Burr, assigned to Fielding the said two bedstead patents, except for a specified portion of the United States, and received from him the following agreement:

"Whereas, Sanford S. Burr has this day conveyed to me certain letters patent, with the expectation that I shall grant licenses under the same as I shall deem best, the license fee not to be less than five per cent. of the gross sales of the articles patented. Now, I agree, in consideration of one dollar received, to reconvey said patents to said Burr within ninety days from date; subject, however, to any licenses which I may meanwhile grant, and I agree to assign to said Burr, at the time of such reconveyance, all royalties accrued or to accrue under such licenses."

Fielding then went to Chicago, and, representing that he was the owner of the Burr patents, made a verbal agreement with Andrews & Co. for a license for the use of the patents and for the purchase of his nettings. They sent to him a written agreement, in accordance with their understanding of the parol contract, but he refused to sign it upon the ground that it was inaccurately drawn. The point in dispute was that he desired an agreement that they would purchase his wire nettings during the life of the Burr patents, while they refused to specify the time during which they would so purchase. Neither

would yield, and Burr's interests were in jeopardy until he settled the controversy by making some concessions to Andrews & Co. in regard to the use of another of his patents, and by coming to New Britain and agreeing with Fielding, by a written agreement, subsequently signed and dated February 14, 1881, that so long as Andrews & Co. should use his nettings in the Burr beds and should pay to him the agreed royalty on the Burr patents, Burr should receive from Fielding all the royalties upon the sales of beds which were sold over $28 each at retail, according to the Andrews price-list, and Fielding should have and retain one-half of all the royalties on beds which were sold at retail at less than $28; and if Andrews & Co. should cease to use said nettings, then Fielding was to pay Burr only one-half of all the royalties received upon the sale of all the beds. The contract contained also the following provision:

"Said parties also agree that said Fielding shall be and is released from the obligations to reconvey said patents to said Burr contained in a former agreement, and it is now agreed between said parties that said Fielding shall continue to hold the title to both said patents; but if said Andrews & Co. shall terminate the agreement hereinbefore referred to, as provided therein, and shall reconvey the exclusive interest to said Fielding, said Fielding will thereupon reconvey said patents to said Burr, or will pay to Burr for the same the sum mentioned in a memorandum of even date, which said sum said Burr agrees to take in full payment therefor."

The sum mentioned in the memorandum was $2,500. Thereupon Fielding agreed to sign and did sign the contract which had been sent to him by Andrews & Co., also dated February 14, 1881, by which he granted them the exclusive right of using said Burr patents for the whole of the territory of which he had control, and they agreed to pay him 5 per cent. of the net receipts from the sales of the folding beds which contained any of the improvements covered by either of said patents. No time was specified during which this license was to be enjoyed. The contract also provided that Fielding would furnish Andrews & Co. wire netting for the Burr beds at 93 cents less than the price theretofore charged, and that, as long as they used such nettings in such bedsteads, they would use no other style without his consent, in beds which were sold at $28 each. The contract also contained the following provision:

"(6) If said Andrews & Co. at any time refuse to pay the royalty herein provided, or shall cease making beds containing any of the improvements patented in and by said patents for a continuous period of three months, except on account of inevitable accident, then this license shall be null and void, and said A. H. Andrews & Co. shall immediately reconvey to said Fielding all the interest and rights herein conveyed to said A. H. Andrews & Co."

The reason of Fielding's unwillingness to reconvey the patents to Burr was the fear that, being a man easily yielding to the persuasions of others, he would sell the patents to Andrews & Co.

In July, 1881, Andrews & Co. were first informed of the existence of the Burr contract, and of his interest in or real ownership of the

patents. They, thereupon, on July 15, 1881, purchased from him, for $2,500, all his interest in the patents, and all his rights under said contract, he agreeing that if Fielding elected to buy the patents, as provided in the contract, he (Burr) would pay to them the money or property received from Fielding. Andrews & Co., on the same day, notified Fielding, that they had discontinued making beds under said patents, and that they should no longer pay royalties, and reconveyed to him all the interest and rights which he had conveyed to them, and did discontinue for three months making the beds described in said patents. Burr forthwith requested Fielding to reconvey the patents to him, or to pay him $2,500, and, neither having been done, demanded of him, on September 9, 1881, a reconveyance of the patents. This demand has not been complied with, and no payment has been made. On July 27, 1881, Andrews & Co. notified Fielding that they should not thereafter use his springs or nettings in their folding beds, but should use a woven wire fabric. On August 2, 1881, Fielding returned to Andrews & Co. their deed or conveyance of July 15th, and denied their right to terminate the license of February 14th at that time, or at any time, except by his consent. Fielding has brought an action at law, which is now pending in this court, against Andrews & Co. to recover the royalties claimed by him to be due under said contract of February 14th. All the royalties which had accrued up to July 15, 1881, have been paid. This bill in equity prays for a reconveyance by Fielding to Burr, or to Andrews & Co., of all Fielding's interest in said patents, and that he be enjoined from claiming any rights thereunder, and from prosecuting said action at law. The plaintiffs all reside in and are citizens of the state of Illinois; the defendant resides in and is a citizen of the state of Connecticut, and the parties were such citizens, respectively, at the commencement of the suit.

The decision does not turn merely upon the question whether, by the terms of the contract between Andrews & Co. and Fielding, they had the right to terminate the license by their act alone, or whether the license was voidable at the option of Fielding, but upon the effect of the clause in the contract between Burr and Fielding in regard to his obligation in case Andrews & Co. did reconvey. If the language of the sixth paragraph of the contract of license stood alone, unexplained by any cotemporaneous agreement, it would be very doubtful whether the parties meant that the license could be ended at the option of the licensees. The construction which is given to this language in leases would probably prevail, viz., that, after default by the licensee, the contract should be voidable at the option of the licensor. In this case the agreement of even date with the license which was entered into between Fielding and Burr, and in consequence of which the license was executed by Fielding, and which was founded upon and refers to the license, says that if Andrews & Co. shall terminate the license "as provided therein, and shall reconvey

the exclusive interest to said Fielding, said Fielding will thereupon reconvey said patents to said Burr, or will pay to Burr for the same" $2,500. This provision shows that these two parties thought that Andrews & Co. could terminate the license, and if they did so terminate, and if they reconveyed to Fielding, then his trust relation to the patents would cease, and he must either reconvey to Burr or obtain the absolute title by a payment of $2,500. After receiving a reconveyance, provided such reconveyance was without fraudulent collusion on his part with Andrews & Co., his duty was to convey to his *cestui que trust* or to buy the patents.

It is not necessary for me to decide what Andrews & Co. had the power to do under the license alone. The agreement between Burr and Fielding was that when Andrews & Co. did all in their power to end the contract, and reconveyed to Fielding, he would no longer retain the patents, but would reconvey to Burr, and let him manage them as he chose, or would purchase them himself for $2,500. In Fielding's contract he provided that as long as Andrews & Co. paid royalties he was to have a part of them. When payment was stopped, and the income ceased, then Burr was to have his patents, or Fielding would buy them. The condition of things which was provided for in this agreement has taken place. Andrews & Co. have tried to terminate, and have reconveyed, but Fielding has done nothing.

Let a decree be entered directing Fielding to convey to Burr the two patents, No. 230,105 and reissue No. 9,393, and restraining Fielding from prosecuting any action for royalties which accrued after the expiration of three months from and after July 15, 1881.